The action was brought by plaintiffs to recover damages for a personal injury to Mrs. Ray, alleged to have been sustained through negligence of the defendant in the operation of an automobile.
The negligence specified in the complaint is that defendant operated her automobile in a careless and negligent manner and at a high, reckless and wanton rate of speed in a thickly populated section of the city of Charlotte and without slackening her speed, struck Mrs. Ray and caused the injury; that defendant, while approaching an intersection at such rate of speed, did not keep an outlook or due care for anyone in said highway, and especially, that she failed to keep such outlook for the plaintiffs.
The plaintiff, Mrs. Ray, the evidence tends to show, drove her husband's truck into the city and parked it. They then started across the *Page 666 
street to a drug store. In the vicinity of the accident Seigle Avenue makes a T intersection with Seventh Street, which plaintiffs endeavored to cross. The injury occurred at or near this intersection. There was no traffic light at this point.
The plaintiff, Mrs. Ray, testified:
"When I got out I parked my car on the right, right across from the drug store. There was a white line in the center of Seventh St. there. After I parked my car opposite the drug store I looked to see if the light was green — the green was on and I waited a minute till the red light come on, and when it come on I looked at Mr. Ray and said, `Come on,' and when I looked back she was hitting me and I was about the center of the street on the white line. I didn't know what happened to me then only I was on the ground and Mr. Ray was trying to pick me up and I told him, `Let me alone.' I believed my leg was broke and by that time there was two soldier boys come and said, `Somebody call the ambulance.' Didn't anybody go right that minute. The man with Mrs. Post wanted to take me to the hospital and I told him he would ruin me if my leg was broke and someone called the ambulance and it wasn't but a minute getting there. I was put in the ambulance and taken to the hospital — Memorial Hospital."
"The traffic light that I looked for is up there about Seventh where Central turns out there (indicating). I looked about the light and it was green and we stopped just a minute and waited till it come on red and when it come on red, I looked at Mr. Ray and said, `Let's go.' I looked up to see if anything was coming; I looked on the other lane too and saw nothing only the cars that was stopping for the red light. I don't know how many — I know a few stopped. I don't know whether there was a bus stopped there or not. There were cars stopped for the red light. The cars that were stopped were going east. Other cars that had to stop would be going west and the red light was on when I started from my automobile over there. I got to the center of the street. I don't know the width of the street. I think it just knocked me down when it struck me. I was suffering so I didn't realize much. Mr. Ray was walking across the street with me. He is a little hard of hearing and when I talk to him I have to talk a little loud. Just as Mrs. Post hit me I saw the car. I don't know how fast she was traveling."
On cross-examination plaintiff testified:
"I walked between the cars that was stopped. The Post car hit me right about the center of the street. I guess the cars were stopped at Seigle Street just about in the center. I don't know how many steps I took before I was clipped. I don't know how wide the street is. It was almost instantaneously. . . . I'm positive that I parked the truck opposite the drug store and was going across at the intersection. I looked to *Page 667 
the right, up East Seventh Street, first, before I made my step into the street, and then looked down the other way, and when I looked back she was hitting me. My husband was right with me, kind of behind me at the time. Just before I stepped out I said to my husband, `Let's go.' I guess anybody in the car could have heard me, because he is a little deaf and I have to talk loud to him. I turned around to him and said, `Let's go,' and stepped into the street and was clipped by the car."
J. Lawrence Ray, plaintiff, testified:
"I am the husband of Mrs. Ray and was with her when she was hurt on January 3rd. We parked our truck right in front of the drug store like on Seventh Street. The green light was on up above us a little piece and we waited until a red light came on and two or three vehicles had stopped for this red light and my wife says to me, `Let's cross,' and we started crossing and when we did there came this car and I seen it just in time to rear back and it barely missed me a little bit and struck her. The car was parked against the curb on Seventh Street, across in front of the drug store. Between the drug store and the light other cars were stopped for the light on the same side where I were parked at. Yes, they were between my truck and the light. The red light was on when we started across the street — that would stop traffic both ways. That's the reason we started across, the traffic was supposed to be stopped coming this direction. We had gotten about the middle of the street, about the center line, when Mrs. Ray was hit. . . . There is no question in my mind that we parked the truck right opposite the drug store. There was a bus, Duke Power bus, there stopped for the red light. There was traffic from there on up to the red light that was stopped. The bus was just above me, kindly in front of me and there was another car right behind the bus. There was a little space in between there, I don't know (how) much — I suppose some 8 or 10 foot. Me and my wife walked behind the bus; I was slightly behind her. She turned and says, `Come on, the red light's on, let's cross,' and stepped from behind the bus. . . . When she turned around and said, `Come on,' or whatever it may be, she stepped out from behind that bus and just as she did that automobile clipped her, and I was right close behind her and it almost got me. She fell some 12 or 15 foot from me when she hit the ground, and was picked up right about the center of the street, about 12 or 15 feet from where I were at. She was back some little distance below the intersection — I would say at least 10 or 12 feet. I never measured it, being excited like I was, I can't say the amount of feet it was. I can't say whether it was in front of the beauty parlor because I weren't taking particular notice to anything like that. I don't know what part of the car struck her, I told you I didn't see it when it struck her at all." *Page 668 
Lt. J. P. Helms, of the Charlotte Police, testified for plaintiff:
"I stepped off the measurement of Seventh Street, and know the width of the street about the distance from the signal light to where Mrs. Post's car was parked. Where the accident actually happened, I can't say but I do know where her car was parked. Seventh Street is about 42 feet in width. Mrs. Post's car was parked right about here (indicating) and I measured from there to the traffic light, that is from about 5 or 10 feet below this barber shop, from there up to about even with the Shell Service Station. That is about 275 feet. It's approximately 100 feet from the corner of Seigle and Seventh Street to where Mrs. Post's car was. That would be about 175 feet from Seigle Street to the light."
There was other evidence on the part of plaintiff, tending to show that Mrs. Ray was severely and permanently injured and that the husband sustained damage by reason of her injuries.
On the trial the husband waived right to personal recovery for hospital expenditures made by him. Where, in the opinion, unless otherwise noted, "the plaintiff" is used in the singular, it will refer to the feme
plaintiff.
The defendant offered evidence tending to contradict, in some part, the plaintiff's evidence.
The defendant demurred to the evidence on the ground that it raised no inference of her negligence and that it disclosed, as a matter of law, that plaintiff's own negligence contributed, proximately, to her injury.
The demurrer was sustained, and plaintiffs appealed.
Closely examining the evidence upon which plaintiff relies to establish defendant's negligence, and giving her the benefit of every inference taken in the most favorable light, as required by precedent — G.S., 1-183, anno. — we are unable to find anything which does more than to engender speculation. The mere fact of collision, standing alone, raises no inference of defendant's negligence. Blashfield, Encyc., Auto. Law, sec. 2328, and cited cases. The circumstances of the collision do not materially aid plaintiff in this respect.
There is no evidence as to the speed of the car, except possibly, that plaintiff did not see it when she looked and that it must therefore have come from a great distance in a short time. The inference insisted upon by plaintiff is that defendant must have come from the vicinity of the red light, 175 feet away — and may have crashed that light — and, therefore, must have been driving at an excessive rate. We do not regard *Page 669 
this evidence as being sufficiently definite in that respect to be of probative value. Plaintiff's evidence that she was "clipped" almost immediately after coming from between other cars and going into the street would rather negative the charge against defendant that she did not keep proper lookout. At any rate, the inferences as to the movements of plaintiff and those of defendant, as taken from plaintiff's evidence, are too evenly balanced to justify a conclusion that defendant was at fault. Such an inference does not arise, as we have suggested, from the mere fact of the collision.
It is ours only to apply the principles of law, no matter how much we may share in sympathy for the injury and suffering caused by this regrettable occurrence, and these require us to affirm the judgment of the trial court.
Affirmed.